IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 12, 2025

**PHILLIP M. MULLINS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Putnam County**
**Nos. 99-0599, 1999-CR-657      Gary McKenzie, Judge**

———————————————

**No. M2024-00440-CCA-R3-PC**

———————————————

Nearly twenty-three and a half years ago, Phillip Mullins, Petitioner, was convicted of felony murder, second degree murder, especially aggravated robbery, and especially aggravated burglary. He was sentenced to life without parole. *State v. Mullins*, No. M2002-02977-CCA-R3-CD, 2003 WL 23021402, at *1 (Tenn. Crim. App. Dec. 29, 2003), *perm. app. denied* (Tenn. June 1, 2004). The convictions were affirmed on direct appeal. Subsequent petitions for post-conviction relief and habeas corpus relief were unsuccessful. *See Mullins v. Lindamood*, No. M2017-00139-CCA-R3-HC, 2017 WL 3332269, at *1 (Tenn. Crim. App. Aug. 4, 2017), *perm. app. denied* (Tenn. Nov. 17, 2017); *Mullins v. State*, No. M2008-00332-CCA-R3-PC, 2008 WL 5272573, at *1 (Tenn. Crim. App. Dec. 19, 2008), *perm. app. denied* (Tenn. Apr. 27, 2009). Petitioner then filed a pro se petition for DNA post-conviction relief, a petition for writ of error coram nobis, and a petition for habeas corpus relief. Following several hearings, the post-conviction court denied relief. Petitioner appealed. On appeal, he argues that: (1) the post-conviction court erred by denying his request for DNA analysis of the evidence; (2) the post-conviction court improperly denied his request for expert funding; (3) the post-conviction court improperly determined his petition for error coram nobis relief was untimely; and (4) the post-conviction court improperly determined his habeas claims were without merit or previously litigated. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JEFFREY USMAN, Sp. J., joined.

Craig P. Fickling, Cookeville, Tennessee, for the appellant, Phillip Mullins.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Bryant Dunaway, District Attorney General; and Beth Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was indicted for first degree murder, especially aggravated robbery, and especially aggravated burglary by a Putnam County Grand Jury for the murder of Vernell Dixon. *Mullins*, 2003 WL 23021402, at *1. The State filed a notice to seek a sentence of life without parole. *Id.* Prior to trial, the grand jury issued a superseding indictment adding the charge of first degree felony murder to the charges in the original indictment. *Id.* At trial, the trial court reduced the premeditated first degree murder count to second degree murder for consideration by the jury. *Id.* Petitioner was found guilty of felony murder, second degree murder, especially aggravated robbery, and especially aggravated burglary. *Id.* The trial court sentenced Petitioner to life without parole on the first degree felony murder count and merged the second degree murder conviction into the felony murder conviction. *Id.* Petitioner was ultimately sentenced to an effective sentence of life without parole. *Id.*

According to the testimony at trial, Petitioner spent August 17, 1999 with several friends smoking crack cocaine. *Id.* at *6. Petitioner was dropped off at a bar about 800 feet from the victim's home around 8:30 p.m. that night after telling his friends he wanted to get more money. *Id.* at *7. Petitioner instructed his friends to pick him up in an hour or an hour and a half. *Id.* He was not at the bar when friends arrived to pick him up at 10:30 p.m. *Id.* The victim was found in the front bedroom of her home, lying in bed motionless on August 18, 1999. *Id.* at *5. Her clothing was pulled up and she had "abrasions" on her face. *Id.* The house was "ransacked," and money was missing from the victim's wallet. *Id.* There was also some jewelry missing that belonged to the victim. *Id.* The back door screen appeared to have been torn or cut, and it seemed as if someone used their shoulder to open the door. *Id.* Footprints from Petitioner's shoes were found both inside and outside the victim's house. *Id.* at *7. Fibers found on Petitioner's clothing were consistent with fibers from the carpet in the victim's home. *Id.* When Petitioner reunited with his friends, he was in possession of a marquise-shaped diamond ring and around twenty dollars in cash, the amount of money the victim was known to keep in her wallet. *Id.*

The proof introduced at trial from the ensuing investigation revealed forced entry to the back door of the victim's home "as if someone had used their shoulder to open the door" and latent shoulder prints consistent with "someone [over five feet, eleven inches tall] wearing a sleeveless shirt or no shirt." *Id.* at *1-6. Petitioner was wearing a sleeveless shirt at the time of his arrest. There were several shoe prints in the victim's back bedroom,

and officers took castings of these prints. A TBI agent testified that three footprints in the victim's back bedroom were made by Petitioner's right shoe and a newspaper pushed up against the back door had a partial print that matched Petitioner's right shoe. Shoe tracks outside the home also matched Petitioner's shoes. *Id.* at *5. Debris collected from Petitioner's clothing was compared to the carpet samples from victim's home and a TBI agent specializing in fiber analysis determined they "could have come from the same source", and "were consistent both physically and optically." *Id.* at *6.

On direct appeal, Petitioner challenged the sufficiency of the evidence, the jury instructions, Tennessee's sentencing scheme for life imprisonment without parole where the aggravating circumstances are not part of the indictment, and the constitutionality of the sentencing scheme for a sentence of life without parole. *Id.* This Court affirmed the convictions and sentence, rejecting Petitioner's challenge to the sufficiency of the circumstantial evidence, and the supreme court denied permission to appeal. *Id.* at *10.[1]

After his unsuccessful direct appeal, Petitioner filed a petition for post-conviction relief. *Mullins*, 2008 WL 5272573, at *1. In the petition, he raised eight claims, including ineffective assistance of counsel. *Id.* Petitioner argued in part that trial counsel should have called Terri Dawson,[2] who Petitioner alleges was with him on the night of the murder, as a witness. *Id.* at *3. Trial counsel testified that Ms. Dawson would have placed Petitioner at the victim's home on the night of the murder. *Id.* at *5. Petitioner acknowledged that Ms. Dawson had given a statement to police implicating him in the crimes but nevertheless insisted that counsel was ineffective for failing to call Ms. Dawson as a witness. *Id.* at *4. Ms. Dawson's pretrial statement to police implicated Petitioner in the murder. *Id.* at *4. Petitioner also challenged trial counsel's failure to present and/or

---

[1] Notably, the standard of review for circumstantial evidence was much more stringent at the time of Petitioner's conviction. It required that circumstantial evidence:

> "'must be not only consistent with the guilt of the accused but it must also be inconsistent with his [or her] innocence and must exclude every other reasonable theory or hypothesis except that of guilt.'" *State v. Tharpe*, 726 S.W.2d 896, 900 (Tenn.1987) (quoting *Pruitt v. State*, 3 Tenn. Crim. App. 256, 267, 460 S.W.2d 385, 390 (1970)). In this way, "'it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" Id. at 896 (quoting *Pruitt*, 3 Tenn. Crim. App. at 267, 460 S.W.2d at 390). While following these guidelines, we must note that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 452-313 S.W.2d 451, 457 (1958).

*State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999).

[2] Ms. Dawson's first name is spelled both "Terri" and "Terry" throughout the record. For clarity, we will refer to her simply as Ms. Dawson.

test DNA evidence at trial and the post-conviction court determined that it was a tactical decision by trial counsel and that Petitioner had failed to present any testimony that exonerated him. *Id.* at *6. The post-conviction court held a hearing on the petition and denied relief. *Id.* at *6. On appeal, this Court affirmed the judgment of the post-conviction court, determining that Petitioner failed to establish that counsel was ineffective and that his other grounds for relief were waived for failing to present them on direct appeal. *Id.* at *9.

Next, Petitioner sought relief via a writ of habeas corpus. *Mullins*, 2017 WL 3332269, at *1. Petitioner argued that his convictions violated double jeopardy. *Id.* The habeas corpus court summarily denied relief after determining Petitioner failed to state a cognizable claim for relief. *Id.* This Court affirmed and the supreme court denied permission to appeal. *Id.*

Petitioner eventually filed a pro se petition for DNA post-conviction relief that forms the basis of this appeal. In the initial petition, Petitioner claimed that "[n]o comparison of the victim's or [Petitioner's] DNA has ever been performed" and that the analysis was necessary to demonstrate his innocence. The post-conviction court initially denied the petition without a hearing but subsequently ordered a hearing and appointed counsel. Once counsel was appointed, another petition was filed alleging that Petitioner would not have been tried or convicted if exculpatory results had been obtained through fingerprint analysis.

Petitioner also filed a petition for writ of error coram nobis, alleging in part that Ms. Dawson signed an affidavit providing Petitioner with an alibi at the time of the victim's murder. Petitioner also filed a pro se petition seeking habeas corpus relief based on a defective superseding indictment. Specifically, Petitioner alleged that he could not be convicted of both especially aggravated burglary and especially aggravated robbery because his charge of felony murder alleged the improper mens rea of recklessness.

At the first hearing on Petitioner's DNA post-conviction claims, post-conviction counsel explained that Petitioner wanted additional testing or new testing of pieces of evidence that were collected during the investigation. Specifically, post-conviction counsel asserted that "modern" scientific techniques would show that a "third party" was at the victim's house at the time of the crime. Post-conviction counsel admitted that some of the items were previously tested for DNA but that the samples were inconclusive. Post-conviction counsel stated that some items were never tested. Post-conviction counsel admitted that they did not "have an expert" that would support their argument. Counsel for Petitioner expressed his desire to seek funds for an expert from the Administrative Office of the Courts but admitted that it was unlikely that the request would be approved because there was not a statutory basis for the request.

Post-conviction counsel admitted that the petition for writ of error coram nobis was untimely but argued that the statute of limitations was tolled because of the discovery of an affidavit from Ms. Dawson in which she claimed that she was with Petitioner on the night of the murder. Ms. Dawson did not testify at the first hearing and did not appear or testify at any of the later hearings.

As to the habeas corpus petition, Petitioner testified that he was deprived of jail credits and that his judgments were void. Petitioner also testified that the superseding indictment improperly charged him with both especially aggravated robbery and especially aggravated burglary and that he was never indicted for second degree murder. Petitioner claimed that he could not have been properly convicted of felony murder where the indictment alleged the mens rea of recklessness.

The post-conviction court issued a lengthy written order denying relief. The order started with a list of the various items Petitioner wanted to submit for DNA testing and concluded that some of them had previously undergone DNA analysis. Specifically, the post-conviction court noted that Petitioner's DNA was found only on his shoes, but Petitioner offered "[n]o evidence" at "any hearing to show that such advances in technology have actually occurred that would allow for the resolution of [the] inconclusive samples." The post-conviction court also noted that several of the items were not initially tested because the sample of the material was too small or DNA analysis would destroy the exhibits. The post-conviction court found that Petitioner failed to satisfy the requirements of Tennessee Code Annotated section 40-30-304, first finding Petitioner failed to prove that "new analysis would resolve the indeterminate samples" as required by section 40-30-304(3).

The post-conviction court also found Petitioner failed to satisfy Tennessee Code Annotated section 40-30-304(2) because he did not show that the evidence was capable of additional testing. While Petitioner requested the actual items from the State, such as the victim's pillowcase, bra, comforter, and panties, he failed to show that the items themselves were even available for testing. In fact, Petitioner acknowledged that some of the items no longer existed and/or their whereabouts were unknown. The post-conviction court found that the Cookeville Police Department had scrapings collected as part of the original investigation, but Petitioner did not request the scrapings or show that they were in a condition that would be subject to further DNA testing. Lastly, the post-conviction court determined Petitioner failed to satisfy Tennessee Code Annotated section 40-30-304(1) because there was still "a distinct, reasonable probability that Petitioner would still have been tried and convicted," even if there was an exculpatory result from testing items due to the "strong evidence" presented against Petitioner at trial.

With regard to the habeas petition, the post-conviction court determined the claims were previously determined. Notably, the post-conviction court cited this Court's opinion on appeal from the denial of habeas relief.

Finally, with regard to the petition for writ of error coram nobis, the post-conviction court denied relief on two grounds. First, the post-conviction court noted that the affidavit of Ms. Dawson was not newly discovered evidence. Noting that parts of the affidavit contradicted Ms. Dawson's prior statements, the post-conviction court determined that it was impeachment evidence. The post-conviction court commented that Petitioner had failed to put forth any evidence to show why this information could not have been discovered sooner and noted that Ms. Dawson did not appear at any of the hearings on the petition. The post-conviction court also questioned the credibility of the affidavit, calling it into "significant question" because the affidavit was not even written by Ms. Dawson and lacked "the indicia of reliability." Following the denial of relief, Petitioner timely appealed.

*Analysis*

*Denial of Post-Conviction DNA Analysis*

On appeal, Petitioner first argues that the post-conviction court erred by denying his request for post-conviction DNA analysis of evidence. Specifically, Petitioner insists that there was no "direct evidence" at trial that Petitioner murdered the victim. Petitioner complains that the DNA technology in 1999 did not establish that he was even present in the victim's home and that there is a "reasonable probability" that advances in DNA technology would "reveal the actual murder[er]" of the victim. Petitioner also argues that because he could not hire an expert it was "impossible" for him to present evidence to support his claims. The State argues that there is no proof "that the evidence is still in existence and in a condition that DNA analysis may be conduct[ed], that the evidence was never previously subjected to the analysis that is now requested, or that there is a reasonable probability that [Petitioner] would not have been prosecuted or convicted if exculpatory result[s]" were obtained through DNA analysis. We agree with the State.

The Post-Conviction DNA Analysis Act allows for defendants convicted of certain homicide and sexual offenses to request post-conviction DNA testing at any time. T.C.A. § 40-30-303. The post-conviction court, after allowing the prosecution to respond, must order a DNA analysis if it finds each of the following:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

*Id*.

In addition, the court may order DNA analysis if it finds "[a] reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction," and the petitioner has satisfied requirements (2), (3), and (4) listed above. Under both the mandatory and discretionary provisions, the petitioner must satisfy all four requirements before the court will order DNA analysis. *See Powers v. State*, 343 S.W.3d 36, 48 (Tenn. 2011).

Failure to meet any of the four criteria is fatal to the action. *See Buford v. State*, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App. Apr. 24, 2003), *no perm. app. filed*. Moreover, a petitioner is not entitled to a hearing; the Act authorizes a hearing only after DNA evidence produces a result favorable to the petitioner. *See* T.C.A. § 40-30-312.

On review of the denial of a petition, we afford "considerable discretion" to the post-conviction court's decision. *Rucker v. State*, No. M2018-00987-CCA-R3-PC, 2019 WL 325046, at *4 (Tenn. Crim. App. Jan. 23, 2019), *no perm. app. filed*. We will only reverse the post-conviction court where its judgment is "not supported by substantial evidence." *Id.*

Here, Petitioner has failed to establish that a reasonable probability exists that he would not have been prosecuted or convicted if exculpatory results were obtained through DNA analysis. The sufficiency of the convicting evidence was upheld on appeal even though the majority of the State's case was circumstantial. *Mullins*, 2003 WL 23021402, at *1. Given the nature of the evidence and what would be tested for DNA, we cannot conclude that Petitioner would not have been prosecuted even if exculpatory DNA evidence was available. T.C.A. § 40-30-304(1). Moreover, Petitioner offered no evidence at the hearing to substantiate his claims that advances in technology would allow for the resolution of the samples that were tested prior to trial and deemed inconclusive. *Id.* at -304(3).

To the extent Petitioner complains that he was unable to hire an expert because his case was not a capital case, an expert is only available in a post-conviction proceeding in a capital case involving an indigent petitioner. Tenn. Sup. Ct. R. 13. Petitioner's case is not a capital case and funding for experts is not authorized. *Davis v. State*, 912 S.W.2d 689 (Tenn. 1995); *Onyiego v. State*, No. W2022-00629-CCA-R3-PC, 2023 2326336, at *24 (Tenn. Crim. App. Mar. 2, 2023).[3]

Petitioner also failed to show that any of the items he wanted to test were even available and/or in a condition that additional testing could be conducted. *Id.* at -304(2). Petitioner failed to establish all four criteria, and the post-conviction court properly dismissed the petition. Petitioner is not entitled to relief.

## Denial of Habeas Corpus Petition

Next, Petitioner challenges the post-conviction court's denial of habeas corpus relief. Specifically, Petitioner argues that the judgment does not properly reflect pre-conviction jail credits, that he was never indicted for second degree murder, and that he cannot be convicted of felony murder.[4] The State argues that Petitioner is not entitled to relief because his claims are either not cognizable, have already been resolved, or have been raised for the first time on appeal.

Petitioner's brief on this issue consists of one paragraph and a numbered list of his complaints. There is no argument save the statement that Petitioner "believes that the [t]rial [c]ourt erred in rejecting" his petition for habeas corpus relief. There are no citations to authority. This issue is waived. Tenn. Ct. Crim. App. R 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waiver in this [C]ourt.").

## Denial of Coram Nobis Relief

Lastly, Petitioner argues that the post-conviction court improperly denied the petition for writ of error coram nobis. Petitioner insists that he has "met his burden" to establish coram nobis relief. The State, on the other hand, argues that the trial court properly determined that the petition was barred by the statute of limitations and not subject to due process tolling. We agree.

---

[3] Petitioner has challenged neither the statute nor the court rule.

[4] Post-conviction counsel notes in his brief that he and Petitioner "have a fundamental disagreement regarding the merits of the issues presented to the trial court." To the extent that counsel is attempting to file brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), counsel has not complied with the requirements of Rule 22 of the Court of Criminal Appeals.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The writ of error coram nobis is "an *extraordinary* procedural remedy," designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). In order to seek error coram nobis relief, a petitioner must "establish[ ] that the petitioner was 'without fault' in failing to present the evidence at the proper time." *Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). The error coram nobis court will then determine "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *Id*.

A petition for error coram nobis relief must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of error coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)). The State bears the burden of raising the statute of limitations as an affirmative defense. *Id*.; *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

It is undisputed that the petition at issue in this case is untimely. Petitioner concedes as much. Thus, the only consideration is whether Petitioner has established due process concerns that require tolling the statute of limitations. *See Workman v. State*, 41 S.W.3d 100, 101-102 (Tenn. 2001). We recognize that due process requires the tolling of a statute-of-limitations period when a petitioner would otherwise be denied "'an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" *Id*. at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). In determining whether due process requires tolling of the statute of limitations, this Court must weigh Petitioner's interest in obtaining a hearing on the grounds of newly discovered evidence against the State's interest in preventing stale and groundless claims. *Harris*, 301 S.W.3d at 145 (citing *Workman*, 41 S.W.3d at 103). To balance these interests, we use the following three-step analysis:

(1) determine when the limitations period would normally have begun to run;

(2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and

(3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Wilson v. State*, 367 S.W.3d 299, 234 (quoting *Sands*, 903 S.W.2d at 301).

Therefore, we must determine whether his asserted ground for relief – a 2021 affidavit attached to a 2021 online news story – actually arose after the limitations period and whether a strict application of the statute of limitations would effectively deny Petitioner a reasonable opportunity to present his claim.

Reviewing the record, the evidence in the affidavit was arguably newly discovered. *See Holliman v. State*, No. W2011-01071-CCA-R3-CO, 2012 WL 3793143, at *3. Ms. Dawson did not testify at trial. Her original statement, which was not introduced at trial or at the hearing on the error coram nobis petition, apparently placed her with Petitioner at the victim's home on the night of the murder. The affidavit, made some twenty-plus years later, alleges that she was with Petitioner on the night of the murder, but that they never went to the victim's home, in effect a complete recantation of her prior statement. Ms. Dawson's affidavit also alleges that she was forced to enter a guilty plea and forced to sign a false statement.

However, even when viewing the affidavit as newly discovered evidence, and allowing equitable tolling of the statute of limitations, Petitioner does not satisfy his burden for error coram nobis relief. To grant writ of coram nobis relief, the Tennessee Supreme Court has indicated that the court "must first consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). In the present case, the post-conviction court was not satisfied with the veracity of the evidence. To the contrary, the post-conviction court concluded that "reliability of the affidavit is . . . a significant question" and the affidavit was "without an indicia of reliability." In reaching this conclusion, the post-conviction court observed "the significant passage of time between the events of the trial and the document's publication" and that the affidavit "contradict[ed] previous sworn statements from [Ms.] Dawson." Furthermore, the post-conviction court noted that Ms. Dawson had not been called as a witness and that the affidavit had not been written by Ms. Dawson but instead by the individual in charge of the website on which the affidavit had been published. Additionally, the affidavit ran contrary to significant physical and other testimony presented at trial. Ultimately, instead of being satisfied with the veracity of the evidence, the post-conviction court indicated that it "has concerns about the timing, authorship,

authenticity, and truthfulness of the document," finding the affidavit to be without an indication of reliability. We cannot conclude the trial court abused its discretion in reaching this conclusion. Accordingly, Petitioner is not entitled to coram nobis relief.

Additionally, as noted by the post-conviction court, Petitioner has failed to show that the result of the trial might have been different had the information in the affidavit been known about or included in the original trial. *Vasques*, 221 S.W.3d at 527 (Tenn. 2007). The affidavit would have been presumably introduced to contradict Ms. Dawson's original sworn statement. Had Ms. Dawson testified and her later affidavit been admitted, her testimony would have been impeached, and the jury would likely have considered her to be an unreliable witness. As noted above, the post-conviction court's order found, for a number of reasons, that "the [reliability] of the affidavit is also a significant question" and the affidavit is "without an indicia of reliability." We agree.

Furthermore, at least two other witnesses and uncontroverted fiber analysis and footprint analysis placed Petitioner at the scene. Finally, additional circumstantial evidence pointed to Petitioner's guilt, including Petitioner's possession of cash after he told his companions he wanted to get more money and his possession of a ring identical to one missing from the victim's possessions. Given the lack of reliability of the newly discovered evidence and the nature of the other evidence presented at trial, Petitioner is not entitled to coram nobis relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE

- 11 -